U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - SHREVEPORT

JAN 18 2013

TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

STEPHANIE BARNES and
JAMES BARNES,
individually & as natural tutors
of minor children S.G., A.B.,
and M.B.

versus

CIVIL ACTION NO. 11-0041
JUDGE TOM STAGG

COMMERCE & INDUSTRY
INSURANCE COMPANY and
AMERICAN INTERNATIONAL
INSURANCE COMPANY

**MEMORANDUM RULING**

Before this court is a motion for summary judgment filed by the defendants, Commerce and Industry Insurance Company and American International Insurance Company (hereinafter collectively referred to as "C&I"), pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Record Document 24. For the reasons set forth below, C&I's motion for summary judgment is **GRANTED**.

## I. BACKGROUND AND PROCEDURAL HISTORY

On December 24, 2009, Dr. Stephanie Barnes ("Barnes"), a laproscopic surgeon, was injured in an automobile accident. According to Barnes, Pamela Buttitta ("Buttitta") pulled out in front of Barnes, causing the two vehicles to collide. See Record Document 27 at p. 2. Buttitta was insured by State Farm Insurance Company, which paid Barnes the limits of policy with Buttitta of $25,000.00. See id. At the time of the accident, Barnes held two insurance policies issued by the defendants: an uninsured/underinsured motorist ("UM/UIM") coverage policy with a limit of $250,000.00 and an excess uninsured motorist coverage policy with a limit of $1,000,000.00. See id. at Ex. 3.

On December 25, 2009, one day after the accident, Barnes's husband reported the accident to C&I. See id., Ex. 2, claim note dated 12/25/2009. In the weeks and months subsequent to the accident, Barnes and her counsel communicated with C&I regarding Barnes's claim pursuant to the policies. Eventually, however, communications broke down and the parties failed to reach an amicable resolution. In October 2010, C&I notified Barnes that it was cancelling her UM/UIM policy as well as her excess uninsured motorist coverage policy. See id. at Ex. 20.

Barnes[1] filed suit against C&I in state court in Louisiana on December 23, 2010, alleging that C&I acted arbitrarily and capriciously in adjusting Barnes's claim and seeking damages, penalties, attorney's fees and costs from C&I pursuant to Louisiana Revised Statutes 22:1892 and 22:1973.[2] See Record Document 1, Ex. 2. On December 29, 2010, C&I tendered $15,000.00, which Barnes rejected and returned to C&I. See Record Document 27 at pp. 8-9. On January 13, 2011, C&I removed the lawsuit to this court. See Record Document 1. In August of 2011 C&I tendered $30,000.00, which included the $15,000.00 originally returned by Barnes, and Barnes accepted the tender. See Record Document 24, Ex. B at Ex. 4. An additional tender of $15,000.00 was made and accepted by Barnes in March 2012. See Record Document 24, Ex. B at Ex. 5.

C&I filed this motion for summary judgment, seeking dismissal of Barnes's claim on the grounds that Barnes did not submit satisfactory proof of loss and that C&I did not act arbitrarily in failing to pay the policy limits. See Record Document 24. Barnes opposed the motion and C&I replied. See Record Documents 27 and 28.

---

[1] The plaintiffs in this case are Dr. Stephanie Barnes and her husband, Dr. James Barnes, individually and as natural tutors of their minor children S.G., A.B., and M.B. For purposes of this memorandum, the plaintiffs are collectively referred to as "Barnes."

[2] Louisiana Revised Statutes §§ 22:1892 and 22:1973 were renumbered from 22:658 and 22:1220, respectively, in 2008. See 2008 La. Acts. No. 415, § 1.

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard.

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010). "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine [dispute] for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir. 2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005). The Fifth Circuit has cautioned that "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy" the nonmovant's burden in a motion for summary judgment. Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir.

4

2002).

## B. Louisiana Law On Bad Faith Insurance Claims.[3]

Insurers in Louisiana owe certain duties to their insureds in adjusting and paying claims. Louisiana law imposes a duty of good faith and fair dealing on insurers by providing for penalties on those insurers who engage in certain types of unfair practices. See Midland Risk Ins. Co. v. State Farm Mut. Auto. Ins. Co., 643 So.2d 242, 244 (La. App. 3d Cir. 1994). Louisiana Revised Statutes section 22:1892(A)(1) provides that insurers must "pay the amount of any claim due any insured within thirty days after receipt of satisfactory proof of loss from the insured. . .". An insurer is liable for damages and for statutory penalties, attorney's fees, and costs if its failure to pay is "arbitrary, capricious, or without probable cause." La. R.S. 22:1892(B)(1).

Similarly, section 22:1973(B)(5) requires insurers to pay "the amount of any claim due within sixty days after receipt of satisfactory proof of loss" and an insurer breaches this duty "when such failure is arbitrary, capricious, or without probable cause." La. R.S. 22:1973(B)(5). If an insurer fails to pay within this time frame, it is liable for "any damages sustained as a result of the breach and may be liable for

---

[3] This diversity case is governed by Louisiana substantive law. See Erie R. Co. v. Tompkins, 304 U.S. 64, 585 S.Ct. 817 (1938); Holt v. State Farm Fire & Cas. Co., 627 F.3d 188, 191 (5th Cir. 2010).

penalties of up to twice the damages sustained." See La. R.S. 22:1973(A), 22:1973(C).

The conduct prohibited in sections 22:1892 and 22:1973 is "virtually identical;" the primary difference is the time period allowed for payment. See Reed v. State Farm Mut. Auto. Ins. Co., 857 So.2d 1012, 1020 (La. 2003). In order to succeed on a cause of action pursuant to these statutes, an insured must show: (1) that the insurer received satisfactory proof of loss; (2) that the insurer failed to pay the claim timely; and (3) that the failure to pay the claim was arbitrary, capricious, or without probable cause. See id.; Sher v. Lafayette Ins. Co., 988 So.2d 186, 206 (La. 2008).

Both Louisiana Revised Statutes 22:1892 and 22:1973 require the insured to submit satisfactory proof of loss. Louisiana courts have construed "satisfactory proof of loss" in a claim pursuant to UM/UIM coverage to mean that the insurer has submitted sufficient facts which "fully apprise" the insurer that (1) the owner or operator of the other vehicle involved in the accident was uninsured or under insured; (2) that he or she was at fault; (3) that such fault gave rise to damages; and (4) establish the extent of those damages. See Hart v. Allstate Ins. Co., 437 So.2d 823 (La. 1983). "The phrase 'arbitrary, capricious, or without probable cause' is synonymous with 'vexatious,' and a 'vexatious refusal to pay' means 'unjustified,

without reasonable or probable cause or excuse.'" La. Bag Co., Inc. v. Audubon Indem. Co., 999 So. 2d 1104, 1114 (La. 2008). Whether an insurer's decision not to pay is arbitrary, capricious, or without probable cause depends on the facts known to the insurer at the time of its action. See Reed, 857 So.2d at 1021 (citing Scott v. Ins. Co. of N. Am., 485 So.2d 50, 52 (La. 1986)).

Sections 22:1892 and 22:1973 are "penal in nature and consequently must be strictly construed." Delahoussaye v. Madere, 733 So.2d 679, 688 (La. App. 5th Cir. 1999). Further, "[t]he sanctions of penalties and attorney fees are not assessed unless a plaintiff's proof is clear that the insurer was in fact arbitrary, capricious, or without probable cause in refusing to pay." See Reed, 857 So.2d at 1021 (citing Block v. St. Paul Fire & Marine Ins. Co., 742 So.2d 746, 751 (La. App. 2d Cir. 1999)). Imposing penalties under the statute is inappropriate when the insurer has a reasonable basis to defend the claim and relies on a good-faith defense in refusing to pay. See id. Moreover, when a legitimate dispute exists as to the extent and causation of a claim, bad faith should not be inferred from an insurer's failure to pay within the statutory time limits. See Guillory v. Lee, 16 So.3d 1104, 1127 (La. 2009).

"A determination of whether an insurer's failure to pay a claim was arbitrary and capricious is a finding of fact." Grilleta v. Lexington Ins. Co., 558 F.3d 359, 368 (5th Cir. 2008). Summary judgment is appropriate in these cases under the Celotex,

supra, standard when the insured fails to set out specific facts indicating that the insurer's conduct was arbitrary and capricious. See Duhon v. State Farm Mut. Auto. Ins. Co., 952 So.2d 908, 910 (La. App. 3d Cir. 2007); Johnson v. State Farm Mut. Auto. Ins. Co., 2012 WL 1745497, at *4 (E.D. La. May 16, 2012).

C. **Application.**

1. **Satisfactory Proof Of Loss.**

In an action for damages pursuant to sections 22:1892 and 22:1973, the plaintiff has the burden of proving the insurer received satisfactory proof of loss. See Reed, 857 So.2d at 1020. A plaintiff who possess information that would qualify as satisfactory proof of loss but does not provide the information to the insurer is not entitled to a finding that the insurer was arbitrary or capricious. See id. C&I contends that there is no genuine dispute of material fact that Barnes submitted satisfactory proof of loss because Barnes's failed to submit complete medical and wage loss records documenting the extent of her damages arising from the accident.[4] See Record Document 24 at 4-5. According to C&I, it did not have Barnes' complete medical and financial records until the lawsuit commenced and subpoenas were

---

[4] C&I also argues that Barnes failed to submit a police report and that Barnes may have been at fault because two witnesses stated in the police report that Barnes was speeding. See Record Document 24. Because the court finds that summary judgment appropriate on other grounds, the court finds it unnecessary to address these issues.

issued. See id. Barnes contends that "by the spring of 2010, or. . .by no later than August 2010" C&I had the requisite proof it needed to pay the policy limits to Barnes. Record Document 27 at 22. Thus, according to Barnes, C&I's tender in December of 2010 was well beyond the 30 and 60-day time limits proscribed in Louisiana Revised Statutes sections 22:1892 and 22:1973.

The court finds that the evidence is clear that Barnes failed to submit satisfactory proof of loss, specifically with regard to causation and the extent of her injuries, the third and fourth requirements for satisfactory proof of loss. See Hart, 437 So.2d at 828. C&I's claim notes and letters to Barnes's counsel show numerous requests by C&I for hospital bills and full medical records but Barnes did not timely comply with these requests.

In her attempt to submit proof of loss, Barnes sent two letters to C&I in the spring of 2010 written by treating physicians indicating that, in their opinion, Barnes could not return to work as a surgeon due to injuries sustained in the accident. See Record Document 24, Ex 7. However, these letters were not complete medical records, but instead were merely one-page letters describing her injury. Therefore, in May of 2010, C&I began asking Barnes's counsel to produce her medical records. See Record Document 24, Ex. B at Ex. 1, claim note dated 6/29/2010.

In June of 2010, C&I asked Barnes to sign and return a Health Insurance

9

Portability and Accountability Act ("HIPAA") medical record release authorization form. Barnes failed to return the form.[5] Without her authorization, C&I could not legally obtain Barnes's medical records. See 45 C.F.R. 164.502(a)(1)(iv) and 164.508. Thus, C&I could only begin collecting Barnes's records after she filed suit by issuing subpoenas to her medical providers.

Uncovering those medical records through discovery procedures revealed two material facts which Barnes failed to disclose to her insurer. First, Barnes unilaterally discontinued her physical therapy treatments in February of 2010 because she was feeling better. See Record Document 24, Ex. F. Second, Barnes sustained injuries to her neck in a boating accident in March of 2010. See id. These facts alone tend to defeat Barnes's claim that she submitted satisfactory proof of loss because they are directly relevant to the cause and extent of Barnes's injuries. Barnes's opposition to C&I's motion makes no mention of these damning facts. Instead, Barnes relies on Hudson v. AIG National Insurance Company, 40 So.3d 484 (La. App. 3d Cir. 2010) in support of her position that she submitted satisfactory proof of loss. However,

---

[5] In her opposition, Barnes attempts to create an issue of fact as to whether she received the HIPPA form in June of 2010. Barnes is careful to avoid denying receipt of the forms--pointing out instead that C&I's claim notes only indicate that the form was created, not that the form was sent via email to her attorney. Regardless, C&I also alleges that the HIPPA form was sent on multiple other occasions, and never returned. See Record Document 28 at 2.

Hudson is readily distinguishable from this case. The issue in Hudson was whether the insured had submitted satisfactory proof of loss even though she failed to give her insurer a recorded statement as required under the policy. See id. at 490-92. The court of appeals found that the insured had submitted satisfactory proof of loss even though she failed to give a statement because the insurer received sufficient information from other means to adjust the claim. Unlike Barnes in this case, the plaintiff in Hudson submitted her "complete medical profile" to her insurance carrier, including the results of diagnostic tests evidencing nerve and spinal damage. See id. Here, Barnes did not turn over her complete medical profile to C&I, but only a select portion of her medical documentation. Moreover, the few documents that Barnes did submit were not detailed medical "records," but merely letters from physicians which, unlike the records in Hudson, did not contain results of tests or other medical procedures.

Barnes was similarly uncooperative with respect to her financial records, crucial documents for proving the extent of her losses. Despite numerous requests, C&I did not receive any tax documentation until November 10, 2010, when Barnes submitted W-2 forms. See id., Ex. B at Ex. 1 at claim notes dated 11/10/2010. However, C&I had requested much more information from Barnes such as an accounting report, her 2009 tax returns and other financial information. See Record id., Ex. B at Ex. 3. As with her medical records, C&I had to resort to issuing subpoenas to obtain the

11

requested financial records. See Record Document 24, Ex. B at Ex. 1 at claim note dated 8/4/11.

The court finds C&I has met its initial burden under Federal Rule of Civil Procedure Rule 56 of demonstrating an absence of a genuine dispute of material fact with respect to whether Barnes submitted satisfactory proof of loss. C&I has set forth specific facts showing Barnes's failure to produce documents which C&I needed to evaluate her claim. To this day, C&I has not collected all of the requested medical records. See id. at 5. Given that Barnes did not produce complete medical records, failed to sign authorizations for C&I to obtain records, and that, once obtained, the records showed Barnes omitted material medical information, it is clear that Barnes did not "fully apprise" C&I of the extent of her damages. See Hart, 437 So.2d at 828.

Barnes fails to raise a genuine dispute on the issue of satisfactory proof of loss, nor does she explain why she did not furnish the requested medical and financial records. Instead, Barnes simply concludes that by August of 2010, "[d]efendants were in possession of all information necessary to make an unconditional tender. . ." because C&I knew that Barnes was injured and could not work. Record Document 24 at 22. Yet, Barnes fails to set forth specifically what C&I knew and when they knew it. Barnes's statement rings of a conclusory and unsubstantiated allegation which is insufficient to overcome Barnes's burden as the nonmovant under Federal Rule of

Civil Procedure Rule 56. See Ramsey, 286 F.3d at 269. Therefore, summary judgment is appropriate.

### 2. Arbitrary And Capricious.

Even had Barnes established that she submitted satisfactory proof of loss, C&I has demonstrated an absence of a genuine dispute of material fact as to whether C&I acted "arbitrarily" or "capriciously" in adjusting her claim. As noted, the terms "arbitrarily" and "capriciously" mean "unjustified, without reasonable or probable cause or excuse." La. Bag Co., 999 So. 2d at 1114. An insurer acts in bad faith under Louisiana Revised Statutes 22:1892 and 22:1973, supra, when it arbitrarily refuses to unconditionally tender an "undisputed amount" within thirty or sixty days after its insured submits satisfactory proof of loss. Calogero v. Safeway Ins. Co. of La., 753 So.2d 170, 174 (La. 2000). An undisputed amount is the "figure over which reasonable minds could not differ." McDill v. Utica Mut. Ins. Co., 475 So.2d 1085, 1092 (La. 1985). However, when a legitimate dispute exists as to the extent or causation of a claim, bad faith should not be inferred from an insurer's failure to pay within the statutory time limits. See Guillory, 16 So.3d at 1127.

The basis for Barnes's allegation that C&I acted in bad faith is that C&I's tender of $15,000.00 in December of 2010 was "too little, too late." Record Document 26

at 23. At the outset, the court notes that while Barnes dismisses the $15,000.00 tender as "too little," she does not specifically allege the undisputed amount which should have been paid by C&I. Regardless, the court finds no evidence that C&I's investigation was unreasonable or that it arbitrarily withheld paying Barnes's claim.

As previously noted, C&I was not provided with any tax records to verify Barnes's wage loss claim until November 10, 2010, despite numerous requests for the information. See Record Document 24, Ex. B at Ex. 1 at claim notes dated 11/10/2010. When the records were finally submitted, they were not complete, nor did they reflect all of the information that C&I requested. See id., Ex. B at Ex. 3. Even still, C&I persisted in its efforts. On November 30, 2010, C&I's counsel informed Barnes's attorney that C&I was prepared to make a tender for the injuries and requested that Barnes's counsel provide a W-9 form so that they could process the tender. See id., Ex. B at Ex. 1 at claim note dated 11/30/10. Also by November 30, 2010, C&I had engaged a forensic accountant to review Barnes's tax information and to determine what additional information was needed from Barnes. See id. The exact date when Barnes's counsel submitted a W-9 is unclear, but according to C&I's notes, it was not received by C&I until sometime after December 14, 2010. See id., Ex. B at Ex.1 at claim note dated 12/14/2010. Upon obtaining the form, C&I subsequently made its first tender of $15,000.00 on December 23, 2010, well within 30 days of

C&I's receipt of the W-9.

Surprisingly, Barnes rejected the December 2010 tender. See Record Document 27. In her opposition, she states that she did so because the check did not "reflect on its face that it was an unconditional tender." Id. at 23. However, the letter from C&I's counsel accompanying the tender clearly states that "the amount of $15,000.00 [] represents an unconditional uninsured/underinsured motorist tender to your client. . ." and that "[t]his unconditional tender is based on the limited medical information which we have received." See Record Document 24, Ex. B at Ex. 3. The court wonders why Barnes did not accept this tender even though she accepted C&I's subsequent tenders in September of 2011 and March of 2012 despite the fact that those checks similarly did not reflect on their face that they were "unconditional." See id. at Exs. 3 and 4. Accordingly, the court finds that C&I's tender of $15,000.00 in December of 2010 was timely and an appropriate amount given the limited amount of information known to C&I at the time and Barnes's delay in supplying necessary documentation.

Similarly, the court finds that C&I was in good faith when it tendered $30,000.00 in September of 2011 and another $15,000.00 in March of 2012. C&I issued $30,000.00 to Barnes on September 6, 2011, after it received all of Barnes's tax

15

information C&I had requested in discovery.[6] C&I tendered $15,000.00 in March of 2012 following examinations by its expert physicians which revealed ongoing pain treatment and possible psychological damages. See Record Document 24 at 5. In each case, C&I tendered payment promptly upon receiving sufficient documentation of Barnes's loss.

Barnes also argues that C&I's bad faith is demonstrated by its failure to adequately investigate her claim and cites Guidry v. State Farm Fire & Casualty Company, 74 So.3d 1276 (La. App. 3d Cir. 2011) for the proposition that an insurer must take substantive and affirmative steps in evaluating a claim. The court finds Guidry distinguishable on three critical grounds. First, unlike C&I in this case, the insurer in Guidry was furnished with the insured's medical authorizations for "all of his medical records." Id. at 1287. Second, in Guidry, the insurer refused to make any tender whatsoever, a fact that the court relied upon heavily in upholding a finding a bad faith. See id. Third, Guidry is not helpful to Barnes because, as discussed above, C&I took substantive and affirmative steps to accumulate facts in investigating her claim, namely requesting and analyzing Barnes's medical and financial records.

---

[6] C&I originally issued the $30,000.00 tender on August 4, 2011, the day that it received all of the tax information it requested via discovery requests. However, that check was apparently misplaced by Barnes or her attorney, and so the tender was re-issued on September 6, 2011. Thus, the check was timely issued, within 30 days of Barnes notifying C&I that she had misplaced the check.

Instead, this case is more analogous to the Louisiana Supreme Court's recent decision in Hawkins v. UNUM Life Ins. Co. of Am., 99 So.3d 24 (La. 2012). There, the Louisiana Supreme Court upheld the district court's grant of summary judgment in favor of an insurer where the plaintiff failed to produce financial information requested by the insurer. The court in Hawkins found that:

> The plaintiff was statutorily and contractually obligated to produce the financial information for his proof of claim. Although the plaintiff was apprised that the information was crucial to the assessment of his entitlement to benefits, he knowingly and intentionally failed to comply over the course of several years with the insurer's good faith efforts to resolve his disability claim. Once the economic information was provided to the insurer, benefits were paid within the thirty-day statutory delay. Under the totality of these facts, we find there is no genuine issue of material fact that [the defendant]'s refusal to pay the plaintiff disability benefits prior to its receipt of his economic information was not arbitrary, capricious, or without probable cause...

Id. at 27. Similarly, Barnes knowingly failed to comply with C&I's requests for crucial information. When she finally did, C&I timely paid within the applicable statutory delays.

Barnes has failed to specifically allege facts which would demonstrate arbitrary or capricious behavior on the part of C&I. The court finds that there is no evidence that C&I unreasonably delayed conducting an investigation, and that C&I demonstrated its good faith by making three tenders totaling $45,000.00. Even if Barnes could show that C&I did not pay within the statutory time limits, this court

cannot infer bad faith on the part of C&I because C&I has clearly demonstrated that it had legitimate questions as to the extent and causation of Barnes's injuries. See Guillory, 16 F.3d at 1127. Accordingly, summary judgment is appropriate in this case because Barnes has not set out specific facts indicating that the C&I's conduct was arbitrary and capricious. See Duhon, 952 So.2d at 910.

### III. CONCLUSION

C&I has established that there are no genuine issues of fact that Barnes failed to submit satisfactory proof of loss and that it acted in good faith in adjusting Barnes's claim. Therefore, C&I's motion for summary judgment is **GRANTED** and Barnes' claims are **DISMISSED WITH PREJUDICE**.

A judgment consistent with the terms of this Memorandum Ruling shall issue herewith.

**THUS DATED AND SIGNED** at Shreveport, Louisiana this 19th day of January, 2013.

JUDGE TOM STAGG