

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

STEPHANIE BARNES and
JAMES BARNES,
individually & as natural tutors
of minor children S.G., A.B.,
and M.B.

CIVIL ACTION NO. 11-0041

versus

JUDGE TOM STAGG

COMMERCE & INDUSTRY
INSURANCE COMPANY and
AMERICAN INTERNATIONAL
INSURANCE COMPANY

## MEMORANDUM RULING

Before this court is a motion in limine filed by the plaintiffs, Stephanie Barnes and James Barnes, individually and as natural tutors of minor children S.G., A.B., and M.B. (collectively "Barnes"[1]), seeking to exclude evidence of Dr. Barnes's post-accident income. See Record Document 69. Specifically, Barnes argues that the income that Dr. Barnes receives from Minimally Invasive Surgery, LLC ("the Business"), a company which Dr. Barnes is the sole owner of, is "passive income"

---

[1] For clarity, Stephanie Barnes will be referred to individually as "Dr. Barnes" while the plaintiffs collectively are referred to as "Barnes."

and therefore not relevant to Barnes's claim for loss of earning capacity. See id. The defendants, Commerce and Industry Insurance Company and American International Insurance Company (collectively "C&I"), filed an opposition arguing that there is no distinction in the law between "earned income" and "passive income," and that, even if there is, the plaintiffs have not proven that Dr. Barnes's income from the Business is passive income. See Record Document 81. Barnes filed a reply memorandum. See Record Document 89. For the reasons set forth herein, the plaintiffs' motion in limine is **GRANTED**.

## I. BACKGROUND[2]

Dr. Barnes and her husband, Dr. James Barnes, are both laparoscopic surgeons. Prior to the car accident on December 24, 2009, Dr. Barnes and her husband both practiced surgery at the Business, which Dr. Barnes has been the sole owner of since 2004. See Record Documents 69 and 81, Ex. E at 3, Ex. F at 3. Dr. Barnes presently remains the sole owner of the Business. See Record Document 81, Ex. G at 5. Both before and after the accident, Dr. Barnes has been paid both wages and income distributions by the Business. See Record Document 69. Since the accident, the Business's earnings and Dr. James Barnes's wages have both increased while Dr.

---

[2] The facts of this case have been summarized in the court's previous Memorandum Rulings. See Record Documents 35 and 54.

Barnes's wages have decreased. See Record Document 81, Ex. A at 1.

Prior to the accident, Dr. Barnes and her husband were the only two doctors employed by the Business and the company's income was generated by their labor. See Record Document 69. Barnes argues that Dr. Barnes has not performed any work for the Business since her accident and therefore none of the income generated by the Business after the accident can be attributed to her. Moreover, Barnes argues that because none of the Business's income can be attributed to Dr. Barnes, any post-accident income she received from the Business is passive income and has no bearing on her claim for loss of earning capacity. See id.

C&I claims there is no distinction in the law between passive and earned income. See Record Document 81. C&I also opposes Barnes's motion on seemingly equitable grounds because Barnes intends to use her pre-accident income from the Business for her claims for past and future lost wages. Finally, C&I argues that Barnes is capable of working at the Business or in a different medical capacity outside of the Business but has chosen not to do so. See id.

## II. LAW AND ANALYSIS

A claim for loss of earning capacity is determined "by deducting plaintiff's earning ability after the injury from his earning [a]bility immediately prior to the injury rather than by deducting his income after the injury from his income prior to

the injury." Coco v. Winston Indus., Inc., 341 So. 2d 332, 338 (La. 1976). "What plaintiff earned before and after the injury does not constitute the measure. Even if he had been unemployed at the time of the injury he is entitled to an award for impairment or diminution of earning power." Folse v. Fakouri, 371 So. 2d 1120, 1123 (La. 1979). "Damages should be estimated on the injured person's ability to earn money, rather than what he actually earned before the injury." Id.

"An award for lost earning capacity encompasses the loss of one's potential, that is, the loss or reduction of a person's capability to do that for which he is equipped by nature, training and experience." Sallis v. City of Bossier City, 680 So. 2d 1333, 1340 (La. App. 2d Cir. 1996). Relevant factors for a fact finder to consider when deciding a loss of earning capacity claim include "the plaintiff's physical condition before and after his injury; his age and life expectancy; his work record and previous earnings; the amount plaintiff probably would have earned absent his injury; and the probability that he would have continued to earn wages over the balance of his working life." Id. Additionally, the fact finder should consider "whether and for how long plaintiff's disability will prevent him from engaging in work of the same or similar kind that he was doing at the time of his injury and whether plaintiff has been disabled from work for which he is fitted by training and experience." Id. A plaintiff bringing a loss of earning capacity claim must also "produce medical


evidence indicating with reasonable certainty that he has a residual disability causally related to the accident." Fruge v. Hebert Oilfield Constr., Inc., 856 So. 2d 100, 105 (La. App. 3d Cir. 2003).

Notably absent from the factors the fact finder should consider and what a plaintiff must prove is a requirement for the plaintiff to show a decrease in income. Despite C&I's protestations to the contrary, there is a distinction in the law between passive income and earned income. "Earned income is income derived from one's labor and/or employment." Iles v. Ogden, 37 So. 3d 427, 432 n. 4 (La. App. 4th 2010). Passive income is "unearned" income. See id. at 432; Sorrells v. Eddie Knippers & Assoc., Inc., 544 So. 2d 556, 562 (La. App. 1st Cir. 1989). Moreover, the cases cited in the plaintiffs' motion show that the fact finder should not consider passive income when deciding a claim for loss of earning capacity.

The Louisiana Supreme Court addressed a factually similar scenario in Hobgood v. Aucoin, 574 So. 2d 344 (La. 1990). The plaintiff was injured in a car accident in November 1982. See id. at 344. Plaintiff owned an oil well service business and continued doing work for the business after his accident, but claimed that he could not work as long or as hard as he once had. See id. at 345. However, despite plaintiff's disability and a "severe depression" in the oil and gas industry, the business's income rose from $77,000 in 1982 to $83,000 in 1985 and $92,000 in

1986. See id. at 345-46.

Both the trial court and court of appeal initially refused to award the plaintiff damages for loss of earning capacity. See id. at 344. The Louisiana Supreme Court reversed, holding that plaintiff had proven his claim. On remand, the court of appeal awarded $50,000 on the loss of earning capacity claim. See id. at 344-45. The supreme court affirmed, noting that although the plaintiff "has not suffered a loss of income after the accident as compared to his earnings prior to the accident," his ability to earn a living had unquestionably been "impaired" as a result of the car accident. See id. at 347-48.

Like the plaintiff in Hobgood, the Business that Dr. Barnes owns has prospered following her car accident. It is undisputed that Dr. Barnes has not done any work to contribute to the Business's earnings. C&I points to this as a reason that Barnes's motion should be denied. However, the plaintiff in Hobgood returned to work for his company in a limited capacity yet was still able to recover on his loss of earning capacity claim. Thus, it is unclear to this court how Dr. Barnes's ability (or lack thereof) to return to work in any capacity is relevant to whether the fact finder should take into account Dr. Barnes's post-accident income from the Business when considering her loss of earning capacity claim.

Another relevant case cited by the plaintiffs is Fruge v. Hebert Oilfield

Construction, Inc., 856 So. 2d 100 (La. App. 3d Cir. 2003). The plaintiff in Fruge was injured in a car accident and returned to work in a limited capacity after his employer made numerous accommodations for his disability. See id. at 102-03. Fruge's income rose significantly after returning to work—he earned just under $29,000 in 1999 as a machinist, just over $51,000 as a night supervisor in 2000, and over $59,000 as a computer numerical control operator in 2001. See id. at 103. However, Fruge's employer testified that Fruge would be the first person fired if cutbacks occurred. See id.

The court held that Fruge had a valid claim for loss of earning capacity. See id. at 106. Specifically, the court stated that "'[W]hat the plaintiff earned before and after the injury does not constitute the measure' of damages for loss of earning capacity." See id. (quoting Hobgood, 574 So. 2d at 346). The court held that while Fruge had not yet suffered any economic loss due to his increased wages, "his injury places him at a great disadvantage in the labor market." Fruge, 856 So. 2d at 106. Thus, Fruge's improved financial condition following his accident did not prevent him from receiving damages for loss of earning capacity. This court sees no reason why the success of Dr. Barnes's Business after her accident, which cannot be attributed to her, should be used to defeat her loss of earning capacity claim.

Plaintiffs also cite to Sorrells v. Eddie Knippers & Associates, Inc., 544 So. 2d

556 (La. App. 1st Cir. 1989). In Sorrells, the defendants in a wrongful death case hired an expert economist to calculate the decedent's past and future lost wages. See id. at 561. The court of appeal held that the defendant's economist made two errors: first, he used post-tax income calculations; second, he relied upon tax returns that included passive income. See id. at 562. The court of appeal held that the wrongful consideration of decedent's passive income and use of post-tax calculations essentially offset one another, so the errors were harmless and the damages award was ultimately correct. See id.

Additionally, plaintiffs cite to Clark v. Bobby L. Clark Trucking, 679 So. 2d 157 (La. App. 2d Cir. 1996). In Clark, the plaintiff, Clark, co-owned a trucking company with his wife. Clark was injured while doing work for the company. See id. at 159. The company's worker's compensation insurer paid Clark benefits until it learned that the company was still operating and producing income. See id. The court held that the income Clark received from the company following his injury was not wages because it was not earned by Clark's labor. See id. at 161-62. Specifically, the court found that the company's income was attributable to Clark's wife, who took over the management of the company after Clark was injured. See id. at 159-60.

Another worker's compensation case cited by the plaintiffs, France v. A&M Wood Company, 566 So. 2d 106 (La. App. 2d Cir. 1990), is compelling. In France,

the defendants claimed that the plaintiff was not totally disabled because, despite not working at all following his accident, he rented trucks and equipment that he owned to his former work crew. See France, 566 So. 2d at 111. The court disagreed, holding the money plaintiff received for renting his trucks and equipment was "a return on capital rather than labor" and thus was not earnings. Id. C&I argues that France is distinguishable because the plaintiff in France could not work but Dr. Barnes can. This argument is unavailing because it has not yet been established that Dr. Barnes can work, and even if she can, this fact would not negate the holding of France that income not due to one's labor is passive income, not earnings.

Three additional cases cited by the plaintiffs, which C&I did not address in its opposition, further support the plaintiffs' position. In Maire v. Charbonnet, the court held that rent the plaintiff received from properties he owned was not wages because the plaintiff's wife managed the properties. See 543 So. 2d 544, 545-46 (La. App. 4th Cir. 1989). Moreover, the Louisiana First Circuit has held that profits of a corporation co-owned by the plaintiff were not income attributable to the plaintiff because her partner managed the corporation's business. See Kirn v. East Jefferson Hosp., 691 So. 2d 127, 132-33 (La. App. 1st Cir. 1997). Finally, in Champagne v. Martin Mills, Inc., the plaintiff's employer paid him worker's compensation benefits following an on-the-job injury until the employer learned the plaintiff and his wife

purchased a convenience store. See 607 So. 2d 992, 993-94 (La. App. 3d Cir. 1992). The trial court concluded that any benefits the plaintiff received from the store were not income because the plaintiff was merely a co-owner and his wife managed the store's business. See id. at 995-96. This finding was not challenged on appeal and the appellate court affirmed the damages award. See id.

The weight of the case law greatly favors Barnes's position. Dr. Barnes's post-accident income received due to her ownership of the Business is clearly passive income because Dr. Barnes has not worked since her accident. Enrichment from passive income is not a factor for the fact finder to weigh when considering a loss of earning capacity claim. Therefore, to the extent that C&I intends to introduce evidence of Dr. Barnes's post-accident income from her Business, Barnes's motion is **GRANTED**.

### III. CONCLUSION

For all the foregoing reasons, Barnes's motion in limine to exclude evidence of Dr. Barnes's post-accident passive income in relation to her loss of earning capacity claim is **GRANTED**.

An order consistent with the terms of this Memorandum Ruling shall issue herewith.

**THUS DATED AND SIGNED** at Shreveport, Louisiana this 20th day of November, 2013.

_____
JUDGE TOM STAGG